UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DRAKE A. JONES,                        Civil Action No.: 19-12734
                                       Honorable Mark A. Goldsmith
                    Plaintiff,         Magistrate Judge Elizabeth A. Stafford

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 14]

Drake A. Jones appeals a final decision of the Commissioner of

Social Security (Commissioner) denying his application for supplemental

security income (SSI) under the Social Security Act.  Both parties have filed

summary judgment motions, referred to this Court for a report and

recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the

record, the Court finds that the administrative law judge's (ALJ) decision is

supported by substantial evidence, and thus **RECOMMENDS** that:

- Jones's motion [ECF No. 11] be **DENIED**;

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor
defendant.

- the Commissioner's motion [ECF No. 14] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42

  U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Background and Disability Application

Jones was born in December 1969.  [ECF No. 9-5, PageID.253-261].

He was found disabled in 2007, but determined to be no longer disabled in

2012.  [ECF No. 9-2, PageID.46].  Jones has no past relevant work.  [ECF

No. 9-2, PageID.54].  He alleged disability due to gunshots to the abdomen

and a permanent colostomy bag.  [ECF No. 9-3, PageID.157].  Jones was

"shot 11 times and had a permanent colostomy placed in 2007."  [ECF No.

9-7, PageID.426].

After the Commissioner denied his application initially, Jones

requested a hearing, which took place in June 2018 and during which he

and a vocational expert (VE) testified.  [ECF No. 9-2, PageID.101-125].  In

a September 2018 written decision, the ALJ found Jones not disabled.  [*Id.*,

PageID.43-55].  The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Jones timely filed for

judicial review.  [*Id.*, PageID.32-34; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

3

and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Jones was not disabled. At the first step, he found that Jones had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 9-2, PageID.48]. At the second step, the ALJ found that Jones had the severe impairments of permanent colostomy bag secondary to abdominal injuries from gunshot wounds; chronic abdominal and back pain secondary to gunshot wounds; affective disorder; severe alcohol use disorder; and moderate cannabis use disorder. [*Id.*]. Though Jones also suffered from hyperlipidemia, gastroesophageal reflux disease (GERD), hypertension, headaches and eczema, the ALJ found that these conditions only minimally limited Jones's ability to perform work-related activities. [*Id.*, PageID.49]. And he found that Jones's alleged impairments of degenerative disc disease and seizure-disorder were non-medically determinable impairments. [*Id.*]. Next, the ALJ concluded that none of his impairments,

either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*].

Between the third and fourth steps, the ALJ found that Jones had the RFC to perform sedentary work as defined by 20 C.F.R. § 416.967 (a),[3] except:

> [H]e can occasionally perform postural activities; however, he can never climb ladders, ropes, or scaffolds.  He is limited to simple, routine, and repetitive tasks involving only simple, work-related decisions, with few, if any, work place changes.  He is limited to work involving quota based tasks as opposed to production requirements.  He can have no interaction with the general public and only incidental interaction with coworkers (i.e. could be in proximity to them, but not as a member of a team)

[*Id.*, PageID.50-51].  At the fourth step, the ALJ concluded that Jones did not have past relevant work.  [*Id.*, PageID.54].  At the final step, after considering Jones's age, education, work experience, RFC and the testimony of the VE, the ALJ found that there were jobs in significant numbers that he could perform, including positions as an ink printer, patcher and dial marker.  [*Id.*, PageID.54-55].

---

[3] "Sedentary work" requires being on one's feet for no more than two out of an eight-hour workday and sitting for about six hours of an eight-hour workday.  *See* SSR 83-10, 1983 WL 31251 at *5.

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Jones contends that the ALJ's decision was not supported by substantial evidence because he failed to include all of Jones's "vocationally significant limitations" into the RFC determination.  [ECF No. 11].  The Court disagrees and recommends that the ALJ's decision be affirmed.

6

**B.**

Jones opposes the partial weight the ALJ gave to the opinion of Terry Rudolph, Ph.D., who examined Jones for his SSI application.  In his October 2017 opinion, Dr. Rudolph concluded that Jones had impaired delayed memory and formal judgment, and lacked the concentration required for sequential computations.  [ECF No. 9-7, PageID.443-445].  He also found that "Jones's interpretation of proverbs was superficial and his reasoning was literal and concrete."  [*Id.*].  Jones argues that the ALJ erred by "not includ[ing] any limitations with regard to delayed memory, impaired judgment, or a lack of concentration for sequential computations into his RFC assessment."  [ECF No. 11, PageID.617-618].

Jones also contends that the ALJ erred in finding that he had mild limitations in understanding, remembering or applying information, and in concentrating, persisting and maintaining pace.  [*Id.*, PageID.618 (citing ECF No. 9-2, PageID.50)].  He asserts that Dr. Rudolph's opinion supports a finding that he had more than mild limitations in those areas.  [*Id.*].  Relatedly, Jones argues that the ALJ's hypothetical question to the VE "did not include limitations in Plaintiff's memory facility, concentration, or judgment."  [*Id.*, PageID.619].  And Jones complains that the ALJ gave great weight to the opinion of the state agency psychological consultant,

7

Kathy A. Morrow, Ph.D., who did not examine Jones.  [*Id.*, PageID.617-618; ECF No. 9-2, PageID.53].[4]  Jones's arguments lack merit.

It is true, as Jones argues, that the opinions of examining physicians are usually given more weight than those from non-examining sources. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)).  But the ALJ did not have to defer to the opinion of Dr. Rudolph, a non-treating physician.  *Id.* And the ALJ could give greater weight to the opinion of Dr. Marrow than to Dr. Rudolph's after considering several factors.  *Id.*; *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642-43 (6th Cir. 2013).  The medical sources' examining relationship is only one factor; other factors include the sources' specializations, and the consistency and supportability of their opinions. *Gayheart*, 710 F.3d at 375-76; *Brooks*, 531 F. App'x at 642-43.  Jones's argument that the ALJ erred by not giving Dr. Rudolph's opinion greater weight relies on incomplete analysis; he cites only the examining relationship as supporting his claim of reversible error.

---

[4] Dr. Marrow found that Jones was mildly limited in his abilities to understand, remember or apply information, and to concentrate, persist or maintain pace.  [ECF No. 9-3, PageID.164].  She said that Jones was moderately limited in other areas, but concluded that Jones "retain[ed] the mental capacity to sustain an independent routine of simple work activity" and could "tolerate low stress social demands and adapt to simple changes in routine."  [*Id.*, PageID.168-169].

And critically, even if Dr. Rudolph's opinion deserved more weight, the ALJ did not commit reversible error; Dr. Rudolph's opinion aligns with the ALJ's finding of mild limitations and the RFC limiting Jones to simple, repetitive and routine tasks.

For mental disorders, a mild limitation "slightly" impairs a claimant's ability to independently, appropriately and effectively function on a sustained basis.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.  A claimant with moderate limitations has "fair" abilities to function on a sustained basis.  *Id.*  A claimant with marked limitations has functioning that is "seriously limited," and an extreme limitation means that the claimant cannot function independently, appropriately and effectively on a sustained basis.  *Id.*

Dr. Rudolph's opinion described moderate limitations at most.  [ECF No. 9-7, PageID.443-445].  Though Dr. Rudolph found that Jones had impaired delayed memory and formal judgment, his immediate memory was "in the average range."  [*Id.*, PageID.445].  Dr. Rudolph said that Jones lacked the concentration for sequential computations, but he could perform simple arithmetic and handle his own money, and he had an intact fund of knowledge.  [*Id.*].  None of Dr. Rudolph's findings suggest that Jones was

seriously limited or unable to function independently, appropriately and effectively on a sustained basis; he had no marked or extreme limitations.

If the Court found that the ALJ should have found Jones's limitations moderate instead of mild, that error would not be reversible.  An ALJ adequately addresses moderate limitations in concentrations, persistence and pace by limiting the claimant to simple, routine and repetitive tasks. *Kepke v. Comm'r. of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016). Thus, a finding that Jones had moderate limitations would not undermine the ALJ's assessed RFC that limited Jones "to simple, routine, and repetitive tasks involving only simple, work-related decisions."  [ECF No. 9-2, PageID.50-51].

And, contrary to Jones's argument, the ALJ did not have to describe his mental impairments in the hypothetical to the VE.  The hypothetical that the ALJ posed to the VE included "simple, routine, and repetitive tasks involving only simple work-related decisions with few, if any workplace changes."  [ECF No. 9-2, PageID.119].  That was enough to address Jones's mental impairments.  "Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace."  *Kepke*, 636 F. App'x at 635.  To support his claim of error,

Jones must cite evidence showing "specific, concrete limitations" on his ability to maintain concentration, persistence or pace while doing simple, routine and repetitive tasks. *Id.* Jones cites Dr. Rudolph's opinion, but Dr. Rudolph wrote that Jones had average immediate memory and could perform simple arithmetic; the ALJ's RFC finding comports with Dr. Rudolph's opinion.

The Court finds no reversible error from the ALJ's treatment of Dr. Rudolph's opinion.

## C.

Jones next asserts that "the ALJ failed to provide any basis for rejecting [his] testimony as to his need to change his colostomy bag, or the frequency and duration of time it takes to do so." [ECF No. 11, PageID.621]. Jones "testified he has to empty his bag 3-4 times per day which takes him about 10 minutes." [ECF No. 9-2, PageID.52 (citing ECF No. 9-2, PageID.110-111)]. And in response to questioning by Jones's counsel about "unscheduled time periods," the VE testified that no competitive work environment would tolerate an employee having "three to four additional 10-minute breaks per day." [*Id.*, PageID.123-124]. Jones argues that the ALJ neither incorporated his needed breaks in his RFC nor

explain why he rejected Jones's testimony about the frequency and time periods he needed to empty his colostomy bag.  [ECF No. 11, PageID.621].

But Jones does not show that the ALJ rejected his testimony about his need to empty his colostomy bag.  Jones testified that he emptied his bag three to four times during the entire day; his testimony did not address an eight-hour workday.  [ECF No. 9-2, PageID.110-111].  Jones's argument that the VE testified that his need for breaks was work-preclusive is also off the mark.  After being asked about "unscheduled" breaks, the VE said that taking three to four "*additional* 10-minute" breaks would be work-preclusive. [*Id.*, PageID.123-124].  The VE was not asked and did answer a question about Jones's ability to empty his colostomy bag during regularly scheduled breaks.

In his reply brief, Jones faults the ALJ for failing "to establish how many such breaks would be needed, and how many breaks would be tolerated."  [ECF No. 16, PageID.651].  Jones says that the ALJ "failed to either include the need for changing the colostomy bag into the RFC determination, nor question the VE as to the effect of such need upon the Plaintiff's ability to sustain work activity."  [*Id.*].  But it is Jones's burden to show that he needed a more restrictive RFC.  *Preslar*, 14 F.3d at 1110.  He

does not meet this burden; he does not show that he could not empty his bag during regular breaks within an eight-hour workday.

In *Cline v. Comm'r of Social Sec.*, a medical expert testified that "colostomy patients normally adapt[ ] to their condition and manage[ ] to live very comfortably with a colostomy." 96 F.3d 146, 150 (6th Cir.1996). The court held that the ALJ did not have to pose a hypothetical that assumed the need for extraordinary breaks when "the medical records showed no indication of any difficulties with the colostomy" and the plaintiff never reported to his doctors that "anything was wrong with his colostomy." *Id*. In *Cheeks v. Comm'r of Soc. Sec.*, the plaintiff "alleged that she was required to irrigate the [colostomy] bag at unexpected intervals multiple times each day," but "the ALJ permissibly found that the record did not support her claim that she experienced these complications regularly." 690 F. Supp. 2d 592, 601 (E.D. Mich. 2009).

Here, the ALJ noted that Jones's current records about his colostomy showed normal examinations and no reports of complaints to physicians. [ECF No. 9-2, PageID.52]. Jones cites no contrary evidence. He relies on records showing prescriptions for skin barrier products and colostomy pouches with drainage because of chronic diarrhea. [ECF No. 11, PageID.614 (citing ECF No. 9-8, PageID.490-495, 498)]. He also cites

more than a hundred pages of records as showing that he was prescribed Naproxen for pain. [*Id.* (citing ECF No. 9-8, PageID.488-606)]. If any of those records show that Jones experienced complications with his bag, Jones does not point to them, and the Court has not searched the record to discover evidence for him. "Judges are not like pigs, hunting for truffles that might be buried in the record." *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) (citation and internal quotations omitted).

Like the plaintiffs in *Cline* and *Cheeks*, Jones fails to present evidence showing that his colostomy bag would cause him to need extraordinary breaks. Thus, the ALJ's decision should be affirmed.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Jones's motion for summary judgment be [ECF No. 11] be **DENIED**; that the Commissioner's motion [ECF No. 14] be **GRANTED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: December 18, 2020                    United States Magistrate Judge

14

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 18, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager